CASE 31.—ACTION BY B. F. HAMILTON AND OTHERS
        AGAINST JOHN J. JONES AND OTHERS.—Feb-
        ruary 16, 1910.

## Jones, &c. v. Hamilton, &c.

Appeal from Knox Circuit Court.

H. C. FAULKNER, Judge.

Judgment for plaintiffs, defendants appeal.—Re-
versed.

Boundaries—Conflict in Calls.—The first boundary, starting from
    the beginning point, in a survey and a patent founded
    thereon, was: "Thence with said Jones' line S. 80 degrees
    W., 163 poles, to a beech and cucumber, Levi Goins' corner."
    The call "S. 80 degrees W., 163 poles," was widely variant
    from "Jones' line," so that, if prevailing, much less would
    be included in the survey and patent than if the call
    "Jones' line" prevailed. The surveyor intended to make,
    and the patentees intended him to make, a survey of all
    the land which would be included with "Jones' line" as a
    boundary, and they thought "Jones' line" coincided with
    the call "S. 80 degrees W., 163 poles." Held that, the line
    "S. 80 degrees W., 163 poles," having been actually sur-
    veyed, such call would prevail over that for "Jones' line";
    the latter not being a well-marked, visible line, but merely
    a called, or ideal, line.

JAMES D. BLACK, W. R. BLACK and PITZER D. BLACK
for appellants.

DISHMAN & DISHMAN, JAS. M. HAYS and J. SMITH HAYS
for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—
Reversing.

This action involves the title to 28 acres of land
in Knox county, Ky. The appellees claim to own it
under a patent from the commonwealth issued to W.

S. Miracle and John C. Goodin on the 25th day of July, 1892. The appellants claim title to it by virtue of a patent issued to them by the common-weatlth on the 29th day of December, 1905. Appellees are the vendees of Miracle and Goodin and own all the land covered by the patent issued to their vendors. As the patent to Miracle and Goodin was issued about 13 years prior to that under which appellants claim, the only question is whether the prior patent covers the land in dispute. The survey made for Miracle and Goodin describes the land which they proposed to patent as follows: "Beginning at a chestnut and chestnut oak on the ridge between Greasy Creek and Brush Creek, Wiley Jones' corner; thence with said Jones' line S. 80 degrees W., 163 poles, to a beech and cucumber, Levi Goins' corner; thence with his line S. 13 degrees W., 51 poles, to a dogwood and two beeches on the Knox and Bell county line; thence N. 66 degrees E., 194 poles, with the Bell county line to the beginning." The survey calls for 24 acres of vacant and unappropriated land within the lines above set forth. The patent describes the land in the same terms as the survey, evidently being copied therefrom; and grants to Miracle and Goodin "a certain tract or parcel of land containing 24 acres, by survey bearing date the 21st day of July, 1891, lying and being in the county of Knox and bounded as follows [here follows the boundary given in the survey]."

It is conceded that the land in dispute does not lie within the lines actually given in the survey and patent; but the question in dispute arises as follows: The first line of the boundary is: "Thence with said Jones' line S. 80 degrees W., 163 poles to a beech

and cucumber, Levi Goins' corner." This line constitutes the whole difficulty in the case. The beginning point was a well-known corner and is not in dispute; nor is the ending of the line in dispute, that being a beech and cucumber, Levi Goins' corner. The trouble is that the course and distance S. 80 degrees W., 163 poles, does not run with Jones' line. The line actually surveyed between the beginning point and Levi Goins' corner on the course S. 80 degrees W., 163 poles, constitutes nearly a straight line between the two points, and is widely variant from Jones' line. Jones' line starts almost at right angles to the surveyed line S. 80 degrees W., 163 poles. But it does go to Levi Goins' corner in three calls instead of one; and if, as appellees contend, the line S. 80 degrees W., 163 poles, must be abandoned and the call construed to run with Jones' line, then the 28 acres in dispute are covered by the survey and patent issued to Miracle and Goodin, and instead of their having acquired 24 acres, as described in their survey and patent, they will have acquired about 52 acres of land.

The question, then, narrows down to this: Must we abandon the surveyed line S. 80 degrees W., 163 poles, and adopt Jones' line as a part of the boundary of the patent issued to Miracle and Goodin? If we adopt the surveyed line, then the prior patent does not cover the land in dispute, and appellants are owners of it. If, however, we abandon the surveyed line and adopt Jones' line as the boundary, then the prior patent does cover the land in dispute, and therefore the subsequent patent issued is void, and appellants acquired no title to it. The subjoined map illustrates the question for adjudication:

The triangle, A, B, and C, constitutes the land described in the patent to Miracle and Goodin, if we adopt the surveyed line, S. 80 degrees W., 163 poles, instead of Jones' line, as constituting a part of its boundary. A is the beginning point of the survey, and the straight line, A, B, is the first line called for by S. 80 degrees W., 163 poles, to B, which is Levi Goins' corner. The quadrilateral figure, A, D, E, B, C, constitutes the claim of appellees; Jones' line being A, D, E, B. It is obvious that, if the Jones' lines be adopted as a part of the boundary of the prior patent, the land in dispute is covered by it; and it is equally obvious that if the straight line, A, B, being the surveyed line, be adopted as the first call of the boundary, the prior patent does not cover the land in dispute. As said before, this question turns upon whether we must adopt the line actually surveyed and measured, which is A, B, or whether we will adopt the lines, A, D, E, B, which constitute Jones' line in going from the

first corner to the second.  The evidence shows without substantial dispute that, when the surveyor went upon the ground to make the survey for appellees, he knew two points—A, the beginning, which is in Jones' line, and B, which is Goins' corner—and he desired to run a line which would connect these two points.  Along the straight line, A, B, there were some marks on trees, which led the surveyor and appellee Hamilton to suppose that it was Jones' line.  Therefore the compass was set at A, and the course S. 80 degrees W. obtained.  Then the chainmen measured off the line from A to B, following the marks which were supposed to indicate Jones' line. In other words, the surveyor and Hamilton believed that the line, A to B, being S. 80 degrees W., 163 poles, was Jones' line; whereas, in truth, Jones' line was widely variant from it.  There is no dispute that the surveyor and Hamilton desired to include in the survey all of the land between Jones' line and the Bell and Knox county line, as they knew all of this land was vacant and unoccupied and subject to be patented under the laws of the commonwealth.

The question of law arising is whether or not Miracle and Goodin will be limited to the land actually surveyed and which lies within the lines actually run by the surveyor, or whether there can be included in the survey and patent the land which they intended to include in the boundary, and thought at the time they did include therein.  We are of opinion that the line, A, B, which was actually surveyed and measured out, must control.  There is no dispute that Jones' line is not a marked line, but is merely a called or ideal line; and the question of law we

vol. 137—17

have here really turns upon this distinction. Had
Jones' line been a well-marked, visible line, then it
would stand in the same attitude in solving our
problem as if it were any other natural object. The
rule is that, where natural objects and courses and
distances vary, the natural objects prevail; but where
lines are not marked and defined so as to be visible
to the eye, being merely called or ideal lines, the
rule is different. There the surveyed lines will pre-
vail, and the party claiming title will be confined to
those lines, although he may have believed and
intended them to be identical with the called lines.

In the case of Dimmitt v. Lashbrook, 2 Dana, 1,
the court lays down three propositions which are
said in the opinion to be incontrovertibly true upon
principle, reason, and authority. The second of
these is as follows: "When a line is actually run,
it must be as so run, the true boundary." In Elliott
v. Gibson, 29 S. W. 620, 16 Ky. Law Rep. 708, the
question arose whether a line actually surveyed
which was variant from another line called for was
to be adopted as the boundary of the land in ques-
tion. The court said: "We take it that, as the
patent calls can not both be true, the material thing
to determine, if possible, by any legitimate evidence,
is which line was actually run or designated at the
time by the surveyor." The court then held that
the surveyed line prevails. In Mercer v. Bate, 4 J.
J. Marsh, 334, the difference between a marked line
and a mere ideal line which is called for in a survey
is thoroughly discussed and decided. In the opin-
ion it is said: "If Mercer's closing line had been
marked throughout its whole extent, it could not be
denied that the line so marked would be also a line
of Madison's boundary. Because, calling for it, he

adopted it as it was; and, wherever it was, he would have a right to go, unless it had been so remote, and so repugnant to other calls of Madison, as thereby to show that in calling for it he was mistaken. * * *. But there is in this respect a palpable and essential difference betwixt an actual and an ideal line, or a marked and open line. And as in the one case Madison might be bounded by the marked line, wheresoever it might be (if he made no mistake), so in the other he must be restricted to the line as it appeared to be, and as he believed it was when he called to adjoin it. In the first case he would have a right to the marked line, because, being visible, he knew where it was, and therefore intended that, as marked, it should be his boundary. In the last case, for the very same reason, wherever he supposed the invisible lines were run, he must be bounded, because he intended when he made his survey to be had, and therefore was bounded by it."

In Matthews v. Pursifull, 96 S. W. 803, 29 Ky. Law Rep. 1001, the opinion in the case of Mercer v. Bate, supra, was expressly approved. The very question we have here arose in that case, and in the opinion it is said: "The argument of the counsel for appellant is that the calls for courses and distances in patent 38,433 must give way to the objects called for as forming the westerly boundary of this patent, which in this case would be the easterly line of patent 38,-437. The rule is well settled that courses and distances yield to natural objects mentioned in a deed as the boundary line thereof; but this well-established rule does not apply in this case, because the calls relied on by appellant are not natural objects or monuments. They are merely artificial lines named in a patent under which the patentee claims

both 38,437 and 38,433. The eastern line of patent 38,437, and which the western line of patent 38,433 calls for, is not marked by natural objects, but is only a stake line." The court then cited and approved the following excerpt from Ralston v. McClurg, 9 Dana, 338: "There is no mistake in the courses and length of the line actually run, and the remaining courses and distances lead with certainty to the beginning. Why, then, abandon them, and adhere to a vague and repugnant call for a stake in a line of which the surveyor knew nothing, and for running with that line, in a direction widely variant from it course, and for a distance greatly exceeding its whole length? It does not even appear that the line of Richards was itself a marked line. And this circumstance, though not essential to the conclusion to which we have come, certainly weakens the opposite construction of the survey, so far as it depends upon the position, that an actual marked boundary, or a call for physical objects, must control the calls for courses and distances." The same principle is announced in Young v. Duggin, 99 S. W. 655, 30 Ky. Law Rep. 634. See, also, Johnson v. Harris, 68 S. W. 844, 24 Ky. Law Rep. 449.

It follows from this that appellees are entitled to only the land within the line actually surveyed and measured by the surveyor on the ground, and the fact that the surveyor supposed that the line A B, which he actually surveyed, was identical with Jones' line, is immaterial. He did not know where Jones' line was, and the mere fact that he believed that the marks he saw upon the trees indicated Jones' line can not avail appellees to extend by construction the line A B beyond its actual position as surveyed.

This conclusion necessitates that the judgment of the chancellor be reversed, with directions to enter a judgment dismissing the petition; and it is so ordered.